UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERVICE FIRST LOGISTICS, INC.,

    Plaintiff,

                                                            Case No. 16-14337
v.                                           Hon. Denise Page Hood

J. RODRIGUEZ TRUCKING, INC.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S AMENDED
MOTION TO SET ASIDE DEFAULT AND DEFAULT
JUDGMENT, MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION [Dkt. No. 12],
VACATING THE ENTRY OF DEFAULT [Dkt. No. 6]
AND THE DEFAULT JUDGMENT [Dkt. No. 10] and
DISMISSING PLAINTIFF'S CAUSE OF
ACTION WITHOUT PREJUDICE**

**I. INTRODUCTION**

On January 18, 2017, the Court entered Default Judgment against Defendant. On February 2, 2017, Defendant filed its Amended Motion to Set Aside Default and Default Judgment, Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction ("Amended Motion"). Dkt. No. 12. The motion has been fully briefed. The Court, having concluded that the decision process would not be significantly aided by oral argument, ordered that the motions be resolved on the

1

motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). Dkt. No. 13. For the reasons that follow, the Court sets aside the entry of default and default judgment against Defendant and dismisses Plaintiff's cause of action, without prejudice, for lack of subject matter jurisdiction.

## II. BACKGROUND

This case stems from a shipment of produce (lettuce products) that Plaintiff contracted with Defendant to have Defendant deliver. Plaintiff alleges that Defendant failed to properly refrigerate the load at 35 degrees Farenheit, which caused the products to spoil and the consignee to reject the entire load. The spoiled products caused Plaintiff to incur a loss of $21,863.32, which amount Defendant refused to reimburse Plaintiff.

Plaintiff filed this action on December 13, 2016, asserting that this Court had subject matter jurisdiction pursuant to 49 U.S.C. § 14706 (the "Carmack Amendment"). A certificate of service and summons was executed on December 19, 2016, and Defendant's answer was due on January 9, 2017. When Defendant did not file an answer, Plaintiff moved for and was granted a Clerk's Entry of Default on January 10, 2017. Dkt. Nos. 5 and 6. Plaintiff served Defendant with the Clerk's Entry of Default on January 12, 2017, Dkt. No. 7, and Plaintiff moved for entry of judgment by default with affidavit of sum certain on January 17, 2017, Dkt. No. 8, the

same day that counsel for Defendant filed an appearance in this case. Dkt. No. 9. On January 18, 2017, the Clerk of the Court entered Judgment by Default. Dkt. No. 10. On February 2, 2017, Defendant filed a Motion to Set Aside Default and Default Judgment, Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction, Dkt. No. 11, and the Amended Motion. The Court now addresses the Amended Motion.

## III. ANALYSIS

### A. Legal Standard

Pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), an entry of default and a default judgment may be set aside only upon the showing of: (1) mistake, inadvertence, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of the adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from judgment. *See also Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). As set forth in *United Coin*, the Court also must determine that good cause exists for setting aside default judgment by assessing whether: (a) the plaintiff will be prejudiced; (c) the defendant has a meritorious defense; and (c) culpable conduct of the defendant led to the default. *Id.* at 845; *Shepard Claims Serv., Inc. v. William*

*Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986). The foregoing standards are applied more stringently under Rule 60(b) than Rule 55(c). *Shepard*, 796 F.2d at 194.

As the entry of default is a harsh sanction, "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. *United Coin*, 705 F.2d at 846; *Shepard*, 796 F.2d 193 (there is a strong preference for deciding cases on the merit rather than by default).

**B.     Analysis**

Defendant argues that there is good cause to set aside the entry of default judgment. Defendant maintains that the default judgment is void because the Carmack Amendment is not applicable in this case. If the Carmack Amendment does not apply, the Court would lack subject matter jurisdiction and would have to dismiss Plaintiff's cause of action. As the Sixth Circuit stated in *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (emphasis added):

> If the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4). *United States v. Indoor Cultivation Equipment*, 55 F.3d 1311, 1317 (7th Cir. 1995). <u>A judgment is void under 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter</u>, or of the parties, or if it acted in a manner inconsistent with due process of law." *In re Edwards*, 962 F.2d 641, 544 (7th Cir. 1992) (citation omitted).

Defendant contends that this meritorious defense precludes any prejudice to Plaintiff, particularly as there was no culpable conduct by Defendant. The Court agrees.

4

It is undisputed that the sole basis for subject matter jurisdiction in this Court is Plaintiff's claim for damage to perishable food goods, a claim allegedly rooted in the Carmack Amendment. The Carmack Amendment states:

> (a) GENERAL LIABILITY.
>
> (1) MOTOR CARRIERS AND FREIGHT FORWARDERS. A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702.

The Carmack Amendment applies only to transportation subject to motor carrier or freight forwarder jurisdiction of the Secretary of Transportation or the Surface Transportation Board. 49 U.S.C. § 13506 addresses "Miscellaneous motor carrier transportation exemptions." Section 13506 states, in relevant part (emphasis added):

> (a) IN GENERAL.—Neither the Secretary nor the Board has jurisdiction under this part over—
>
> * * *

5

> (6) transportation by motor vehicle of—
> (A) ordinary livestock;
> (B) <u>agricultural or horticultural commodities (other than manufactured products thereof)</u>;
> (C) commodities listed as exempt in the Commodity List incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, other than frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, or hemp, or wool imported from a foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted);

\* \* \*

Administrative Ruling 107, now Composite Commodity List Administrative Ruling 119, includes as exempt commodities:

(1) Bagged commodities: Placing exempt commodities in bags does not effect the exempt status (page 1);

(2) Horticultural commodities. Plants, vegetables, flowers, Exempt – Law (page 17);

(3) Packaged commodities: Packaging exempt commodities does not affect their exempt status – Law, (page 21);

(4) Vegetables; Bagged – Exempt – Law (page 26);

(5) Vegetables – Cut up – fresh, in cellophane bags – Exempt – law (page 27);

(6) Vegetables – Washed, fresh, in cellophane bags – Exempt – Law (page 28).

Defendant argues that courts have ruled that produce like the commodity at issue here

is exempt, with such rulings being affirmed by the U.S. Supreme Court. *See, e.g., Frozen Food Express v. United States*, 148 F.Supp. 399, 402-03 (S.D. Tex. 1956) ("the following commodities . . . [are] exempt: . . . . fresh cutup vegetables in cellophane bags; fresh vegetables washed, cleaned and packaged in cellophane bags or boxes; . . . ."), *afffirmed* 355 U.S. 6 (1957).

Plaintiff argues that exemptions to the Carmack Amendment are to be strictly construed. *Interstate Commerce Commission v. Weldon*, 90 F.Supp. 873, 875 (W.D. Tenn. 1950)(citing *Piedmont & Northern R. Co. v. Interstate Commerce Commission*, 286 U.S. 299 (1932)). Plaintiff contends that Administrative Ruling 119 does not include the specific types of salad products on the bill of lading in this case. Plaintiff suggests that the products at issue are processed salad products, not raw agricultural commodities in their natural state. Plaintiff states that various people and machines performed a number of different manufacturing processing steps, removing the products from the class of "unmanufactured agricultural commodities." Plaintiff indicates that the items have been "remov[ed] from the ground, procured . . . from the ground, removed the stems and such things (similar to removing a peanut from its shell), washed the products pursuant to the shipper's processing requirements, and packaged the same according to applicable product classifications in recycled plastic containers." Dkt. No. 14, PgID 237-38.

Plaintiff further argues that the "spring mix" product is not a raw plant, but is a combination of several types of lettuce, all of which have been processed and mixed together in particular portions pursuant to manufacturing standards, then packaged for sale to the general public at a retail store. For those reasons, Plaintiff maintains that the raw agricultural commodity has been changed into a commercial item that is no longer exempt from the Carmack Amendment. Citing *Weldon*, 90 F.Supp. at 876. Plaintiff also asserts that Defendant did not cite any authority recognizing that the products at issue in this case are specifically exempt under the Carmack Amendment.

The Court is not persuaded by Plaintiff's arguments. As Defendant notes, *Frozen Food Express* was decided six years after *Weldon* and a year after the Supreme Court's decision in *East Texas Motor Freight Lines, Inc. v. Frozen Food Express*, 351 U.S. 49 (1956). First, in *East Texas*, the Supreme Court addressed the language of the Interstate Commerce Act, specifically Section 203(b)(6) (49 U.S.C. § 303(b)(6)), insofar as when a commodity has been "manufactured" – rather than simply processed. The Supreme Court recognized that:

> Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary, as set forth and illustrated in *Hartranft v. Wiegmann*, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012. There must be a transformation; a new and different article must emerge, "having a distinctive name, character, or use."

*East Texas*, 351 U.S. at 53 (quoting *Anheuser-Busch Brewing Ass'n v. United States*,

207 U.S. 556, 562 (1908)).

In concluding that a chicken that had been killed and dressed, including removal of its feathers and entrails so that it was ready for market, the Supreme Court stated that "this <u>processing</u> which merely makes the chicken marketable [does not] turn[] it into a 'manufactured' commodity." *East Texas*, 351 U.S. at 54 (footnote omitted). The Supreme Court further explained that:

> At some point processing and manufacturing will merge. But where the commodity <u>retains a substantial identity</u> through the processing stage we cannot say that it has been 'manufactured' within the meaning of [§] 203(b).

*Id.* (emphasis added).

Second, in *Frozen Food Express*, the court explained why frozen fruits and vegetables were exempt and determined that a wide range of commodities were exempt, including "fresh cut up vegetables in cellophane bags; fresh vegetables washed, cleaned and packaged in cellophane bags or boxes:"

> Prior to this action by the Court, frozen fruits and vegetables had become a particular bone of contention in the prolonged struggle over the extent and scope of the agricultural exemption. There is a heavy volume of motor carrier traffic in this commodity. The processing to which the fresh product is subjected, after leaving the farmers' hands and before appearing in the familiar frozen-food carton on the grocers' shelves, is extensive and complicated. In holding frozen fruits and vegetables to be exempt, the Home Transfer case has gone far toward settling the entire controversy in favor of the liberal interpretation of the exemption urged by the farming interests, the Department of Agriculture, and those motor carriers (as the Plaintiff) who seek to avoid ICC control in the carriage

> of these commodities.
>
> With this background, the following commodities, of agricultural origin, having undergone some processing but retaining their original identity, we hold exempt: . . . . fresh vegetables washed, cleaned and packaged in cellophane bags or boxes; fruits or vegetables (quick frozen); . . .

*Frozen Food Express*, 148 F.Supp. at 402-03 (noting *Home Transfer & Storage Co. v. United States*, 141 F.Supp. 599 (W.D. Wash. 1956), *affirmed Interstate Commerce Commission v. Home Transfer & Storage Co.*, 352 U.S. 884 (1956)).

For the reasons expressed in *East Texas* and *Frozen Foods Express*, the Court finds that the various types of mixed greens at issue in this case fall within the definition of exempt commodities in *Frozen Food Express* and Administrative Ruling 119. It is undisputed that the product at issue was lettuce, some of which was combined as a "spring mix," had been washed, cut and packaged in plastic clam (cellophane) shells. Although the lettuce had been "processed," the Court cannot find any basis for determining that it had: (1) been transformed, (2) lost its original identity, or (3) become a new and different article with a distinctive name, character, or use, such that the Court could conclude that the lettuce or spring mix had been "manufactured."

The bill of lading documents supplied by Plaintiff undermine its arguments and reinforce the Court's conclusion that the commodities at issue are not subject to the Carmack Amendment. The bill of lading documents specifically identify the products

subject to transport as "exempt commodities." *See* Dkt. No. 14, Ex. E at PgID 284, 286 (each document governing the transaction at issue is literally captioned "**MOTOR CARRIER** STRAIGHT BILL OF LADING FOR EXEMPT COMMODITIES").

Because the products at issue are exempt commodities, neither the Secretary of Transportation nor the Service Transportation Board had jurisdiction over them under Chapter 135, Subchapter 1, and the Carmack Amendment does not apply to the products at issue. And, as the Carmack Amendment does not apply, there is no subject matter jurisdiction in this Court. It is well-established that the lack of subject matter jurisdiction is a non-waivable, fatal defect, *see, e.g., Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365 (1978) (jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or estoppel), and dismissal under Rule 12(b)(1) is required.

The Court holds that the absence of subject matter jurisdiction in this Court establishes that Plaintiff will not suffer prejudice when default judgment is set aside, for two reasons: (1) Plaintiff cannot prevail in this Court as the Court does not have subject matter jurisdiction to hear Plaintiff's case; and (2) dismissal of this action will be without prejudice, *see, e.g., Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006), which means that Plaintiff can re-file its cause of action in an appropriate jurisdiction.

Finally, the Court is persuaded that the entry of judgment by default is not the result of culpable conduct by Defendant. First, the time line for responding to Plaintiff's Complaint was significantly compromised by the date it was served on Defendant and Plaintiff's expediency in defaulting Defendant. Defendant, a corporation, was served on December 19, 2016, with an answer due on January 9, 2017. The Court notes that there were two federal holidays between those dates (Christmas and New Year's).

The Clerk's entry of default was entered on the first day possible (January 10, 2017), and the notice of that default was served on Defendant on January 12, 2017. Counsel for Defendant filed a notice of appearance on January 17, 2017, only the second business day after Defendant received notice of the default. The Court finds that an appearance of counsel within two business days of being notified of the entry of default demonstrates that Defendant was serious about defending this action.

The Court also notes that it only took Plaintiff those same two business days to obtain the default judgment, essentially precluding Defendant from addressing the Clerk's entry of default. Defendant filed its Amended Motion only two weeks after getting notice of the default judgment, approximately six weeks after getting notice of the lawsuit and only three weeks after learning of the entry of default. Again, the Court finds that Defendant's action demonstrates that it was serious about defending

this action.

Second, Defendant has represented that it is, in essence, a closely-held business whose president was distracted by the health condition of, and assisted with the care for, a terminally ill family member during December 2016 and the majority of January 2017 (the family member died on January 16, 2017), the period between when Defendant was served until the day before default judgment was entered. Defendant's president also states that neither she nor Defendant had been sued before, and she was unfamiliar with what to do. The Court is satisfied that Defendant's failure to timely respond to the Complaint was not the result of culpable conduct by Defendant.

For the reasons set forth above, the Court holds that Defendant has established that good cause exists for setting aside the Clerk's entry of default and the judgment of default. The Court grants Defendant's motion to set aside the entry of default and the default judgment and Orders that the Clerk of the Court vacate both the entry of default and the default judgment. Dkt. Nos. 6 and 10. The Court also finds that, because the products at issue were exempt commodities under the Carmack Amendment, the Carmack Amendment does not apply in this case. As sole alleged basis for the Court's jurisdiction in this case is the Carmack Amendment, the absence of a viable claim under the Carmack Amendment deprives the Court of subject matter jurisdiction. The Court grants Defendant's motion to dismiss Plaintiff's cause of

action, without prejudice**.**

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Amended Motion to Set Aside Default and Default Judgment, Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction [Dkt. No. 12] is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk of the Court shall **VACATE** the Clerk's Entry of Default [Dkt. No. 6] and the Clerk's Entry of Judgment by Default [Dkt. No. 10].

IT IS FURTHER ORDERED that Plaintiff's cause of action is **DISMISSED WITHOUT PREJUDICE**.

                        S/Denise Page Hood
                        Denise Page Hood
                        Chief Judge, United States District Court

Dated: April 14, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2017, by electronic and/or ordinary mail.

                        S/LaShawn R. Saulsberry
                        Case Manager